May it please the court, Your Honor, Chase Biven, on behalf of Appellant Daniel Zolezzi, the district court committed reversible error because the application of Estelle and Brecht was objectively unreasonable to Mr. Zolezzi's case. The two prior bad acts evidence that was admitted at Mr. Zolezzi's second trial were not essential to any element that needed to be proved and rendered the trial fundamentally unfair. There was no permissible inference that could be drawn from either one of the prior bad acts evidence. Further, the admission of the prior bad acts evidence had a substantial and injurious effect or influence in determining the jury's verdict. At Mr. Zolezzi's second trial, the prosecution made the prior bad acts evidence the cornerstone of its case. The prosecution used the prior bad acts evidence to paint a picture of Mr. Zolezzi that he frequented bars, got drunk, was rude to women, picked fights with larger men. Then when those fights escalated, he would pull a knife. By way of example, I'd just like to briefly read from the prosecution's closing argument at Mr. Zolezzi's second trial that kind of shows how they used this prior bad acts evidence. Ladies and gentlemen, what happened on April 12th was going to happen. It was just a matter of time. And it's nothing about specifically the circumstances that happened on April 12th that caused it. It was the defendant. The defendant going in, getting drunk, picking arguments, and pulling his knife. But this was a case waiting to happen, and a different victim might have been there. Someone else you know might have encountered the defendant. This portion of the closing argument exemplifies the great weight that the prosecution put on the prior bad acts evidence, essentially saying that it's not really important, the evidence, the actual evidence that you did hear in trial, what was most important was this prior bad acts evidence, that Mr. Zolezzi was a ticking time bomb waiting to explode at any time. And it just so happened that he exploded on April 12th, 1998. Also, this wasn't the only time that the prosecution pointed to the prior bad acts evidence in its closing argument. It did so an additional five times, including when it was talking about intent, specifically the intent needed to convict Mr. Zolezzi of murder in the second degree, which is malice of forethought. Prosecution's use of the prior bad acts evidence further prejudiced Mr. Zolezzi because it was just – it wasn't relevant to any essential issue. The State Court of Appeals found that the evidence – Okay, so what – the problem here isn't just EDPA and – I mean, here we have the Court of Appeals itself deciding that this evidence was not relevant to any issue under California law. But the real problem is what is – what did the clear violation of – a violation of clearly established Supreme Court law that we're looking at? I think we'd have to look at Estelle and Brecht in that sense. Brecht is – Brecht is a case about can we measure harmless error on an atheist. So it's really not relevant to the question of what the State Court standard was. But what does Estelle have to do with it? Well, Estelle looked at it and was dealing with the admission of character evidence, prior bad acts evidence. Estelle specifically said it was not deciding the question. Yes. Well, then, so let's go to something that does decide the question. Are there any Supreme Court cases that have actually decided that question? The prior bad acts question, Judge Fernandez. Yes. Our case in Garceau and I think the case in McKinney both said that it was a new issue. It hadn't been decided by the Supreme Court. That is correct, Your Honor. And so it's back to another panel, of course, and we don't know what's going to happen there. Right. Your Honor, but the – you're right. We've looked and we've found no actual Supreme Court precedent that says the admission of prior bad acts evidence violates due process. No actual post-AEDPA case in the Ninth Circuit, anyway, true post-AEDPA case, that has said that it is a constitutional violation either, right? That is correct. So we have no Supreme Court law and we have no Ninth Circuit law except old Ninth Circuit law. McKinney and – yes. I mean, they're after in date, but they're really not dealing with it. Now, maybe Garceau is now going to have to deal with that question. Right. But it hasn't been decided yet. So you're right, Your Honor. I have no Supreme Court precedent to rely on that specifically dealt with that question. So there we are. And we're back here yet again to see. I'd also like to point out that the limiting instruction used at Mr. Zaleski's trial did not cure any defect of admitting the prior bad acts evidence. The prior bad acts evidence was not relevant to any issue whatsoever, yet the trial judge instructed the jury that they could use a prior bad acts evidence to find the intent necessary to convict Mr. Zaleski of murder in the second degree. Also, the prosecution's evidence is not way – I mean, the instruction was essentially they could use it if they found it relevant. So it's sort of circular. And not if they didn't find it relevant. That is correct, but it should not have been admitted at all. And they also said you can't use it for character. Right. Which is what the danger of it is. Well, yes, Your Honor. But there's also the danger here when you have prior bad acts evidence that isn't relevant to any issue whatsoever, and the court still says you can use it for intent. So now we're still using evidence that should never have been admitted to prove an essential element of the crime. Okay. And the California Court of Appeals said, yeah, we don't think it was sufficiently connected, but let us tell you about intent just from the facts of this case. Right. And we think that it's so overwhelmingly obvious that he intended to do this that we don't think it was a problem. That's what they say. That is what they said. In my position, they were wrong. Of course. They don't know. Because, one, to look at the how the prosecution used the prior bad acts evidence, they made it the cornerstone of their case. They used it in the opening argument. They called two witnesses. They referred to it six times in the closing argument. Also, the fact that jury deliberations were relatively lengthy considering that the prosecution, or excuse me, that the appellee says that the case was weighty, that it took a full day and two half days. Well, that's the general argument. That's the argument. If it wasn't important, then why in the world did these folks argue it? And if they argued it, it must have been important, and since they argued it, it therefore must have had a bad influence. But the California Court of Appeals said, well, you know, this guy lied. He had stories. It's obvious he got these people to come out, and without any apparent provocation, the jury easily could find, without any apparent provocation, he stabbed them. That's all. That's what the Court said. That's forgetting his past acts. That's what he did this time. Isn't that what they said, basically? That is what they said, Your Honor. He had some phony story about the knife and such. Excuse me, Your Honor. And then he had some story about the knife. Yes, he did have a story about the knife. And some other stories, too, along the way. He had plenty of stories, Your Honor. Okay. Let's zoom back. They take a day and a half. That really doesn't mean anything. I've seen juries on a traffic ticket take two days. You know, some move quickly. Some don't. Some like the coffee and the cookies. Others don't. So you never know. You're just speculating. Sure. But also the fact that they convicted him of the lesser included offenses also goes to the point that the evidence was not as weighty as well. Also, I want to point out that the jury did hear four different versions of the events of what occurred leading up to the stabbing. Let me ask you a conceptual question. It's been bothering me for some time, not just in this case. And I've been trying to understand what our case law says about it. Threat was itself a standard devised to review harmless error issues on habeas. It's not applicable in the state courts. It's applicable to us when we're reviewing harmlessness. Under EDSA, if the state conducts its own harmlessness review, do we review its harmlessness review under the EDSA standard, or do we just leap to breath directly? I'm sorry, Judge Berzon. All right. Let me try again. Here, the state court conducted a harmlessness review. It did so, first of all, without acknowledging that there was any possible constitutional issue. But second of all, even if we assume that it was assuming a constitutional issue, we are now here. Let's leap over what I think is the hard problem in the case, which is that where's the clearly established Supreme Court law, and let's say we get to the harmless error question. Do we review the state court appeal's analysis of the harmless error issue under the EDSA deferential standard, or do we just do breath directly? We just do breath directly. All right. Well, then just talk about what the state court appeals thought about whether or not there was or wasn't harmless error is really not relevant. What we ought to be doing is looking ourselves at the facts and apply the correct standard. Yes, Your Honor. Okay. Go ahead. I'm not sure that's right, but to me it's logical, but I'm not sure that's what the case law says. I thought the Supreme Court said we had to do both. I'm not sure. In what case law? Anyway, go ahead. I thought the Supreme Court said that you don't ignore breath and you don't ignore head play either. I don't know. Okay. Go ahead. All right. May it please the Court. David Glassman, Deputy Attorney General, for the Respondent. I think Judge Berzon's question framed the issue exactly correctly, and that is the question in this case, in light of the fact that this is a habeas corpus petition filed after the ADPA, the only relevant question in this case is whether the decision of the State Appellate Court was contrary to controlling Supreme Court precedent. And the petitioner today has as much as conceded that the answer to that is that it was not contrary to Supreme Court precedent, that there is no such precedent upon which he relies. And whether he concedes it or not, the fact is that if we look at the opening brief, there is no reference to any Supreme Court precedent that would remotely address the situation. And in particular, there is no reference to Estelle v. Maguire, a case which I cited in the answering brief. There is no Supreme Court indication to this point that the admission of other acts of evidence constitutes a due process violation. Now, that's the issue that's before the Garceau panel, isn't it, Brian? I know my recollection is that rehearing was granted in Garceau, Your Honor. I don't – I would agree that that's the issue. I don't specifically recollect more than that. We decided in Garceau that, indeed, if the stuff is irrelevant, it's going to be a constitutional violation, and we said this is pre-ADPA. But when it went up to the Supreme Court, they said, sorry, folks, it's not pre-ADPA, it's post-ADPA. So apply the ADPA standard. It's back now in the court of appeal, in our Court. So apply the ADPA standard to the question before it. And, of course, in that case, Estelle v. Maguire, a case that was never raised here and would not give any help to this Appellant because it doesn't – well, it doesn't help him, would be. The only correction or clarification I might make to your characterization, Judge Fernandez, is that insofar as you were saying that the admission of irrelevant evidence is a due process violation, I don't know that Garceau held that admission of due process – or, rather, that due process is necessarily violated by irrelevant evidence, but only that under the facts of that case there was a due process violation. For example, the same would be true of McKinney v. Reese, a case which this Petitioner does rely on. I have distinguished McKinney v. Reese for a number of reasons in my brief. The case at this point has very little to do with our case, a case, McKinney, that is, in which all sorts of evidence, evidence of a defendant's fascination with knives, evidence of a defendant's statements such as death is mine, things that had, you know, virtually nothing to do with his guilt or innocence of the charge of defense. That is a radically different scenario than a case in which the same knife is used by this defendant in other incidents. So – You weren't – I mean, the problem was that you weren't introducing it, and you certainly didn't argue it in the closing argument – I don't mean you, however – as limited to the factual question of whether it was the same knife. I mean, and it is disturbing to deal with a situation in which you see as much emphasis, as was put on this evidence, as there was, by the prosecution in this case. And then an analysis to conclude, as the state court did and as I would as well, that this was just not relevant evidence for any purpose and was likely to – and instead was really in the character – had to be character evidence other than its minor use as to the knife. And I don't know whether that was in dispute. Was it in dispute whether it was his knife? Well, Your Honor, it was – when you say was it in dispute, there was evidence in the case that was presented to jury evidence which was never – the legitimacy of which was never disputed, that the defendant had denied immediately after the murder that it was his knife involved. At the trial? I'm sorry? He denied at the trial. No, he did not. He did not testify in the trial. But insofar as you were addressing a point that the appellant is raising, namely the extent to which the evidence was relied upon in the case, and you'll recall the appellant today described it as the cornerstone of the case, if that was the cornerstone of the prosecution's case, it was obviously unsuccessful. And that is exactly why the case was affirmed by the State Appellate Court. No, it wasn't obviously unsuccessful. You keep saying that. Well, this was disturbing to me because one of the points of intent on which the court of – the trial court specifically said that the jury could consider this was with regard to malice of forethought, which was an element of the crime from which he was convicted. But that's just not true, and you keep repeating. Well, Your Honor, when I say that, what I'm referring to is the fact that as charged,  And you didn't get those, but you did get this one, and this was relevant, and the jury was told it was relevant to that element of intent as well. But the jury evaluating this evidence in light of these prior acts decided that only a manslaughter had been committed. A manslaughter, as you know, is a mitigated homicide that can only be found under these facts if the defendant's version of the petitioner's version of events is credited in some way. But was my statement wrong that as to the element of intent that the jury did have to find for the crime of which he was convicted, they were specifically instructed that this particular other act's evidence was relevant? My recollection of the instruction, and I think Judge Fernandez referred to this earlier, was that the trial court, in explaining the way in which the instruction could be used, advised the jury that they – that if they found it relevant, it was to be considered on that point. Right. Okay. In other words, my point is that they were not directed that it was relevant as a matter of law. It was something – I understand that. But I'm saying that as to the intent element for the manslaughter crime of which he was convicted, they were told and it was argued that this evidence might be relevant if they found it relevant. Okay. In other words, you keep saying that they didn't find the two other forms of intent, but they did find this form of intent. In this form of intent, they were told this evidence could be relevant, too. But, Your Honor, this actually brings up another point you earlier raised, and that has to do with the way in which this claim was presented below. And that is – that is that the courts, when evaluating this at the State court level, were not addressing – there is a throwaway reference in an appellant's brief to a due process claim here, but they were not addressing a due process violation. They were addressing a claim that the evidence lacked the similarity required under a State evidence code statute. And the court of appeal, my recollection of the precise rephrasing of the order that the State court of appeal wrote, is that the court of appeal found that the requisite similarity was lacking under that statute. That court did not find and did not address a due process claim. What was the purpose of admitting the evidence or offering the evidence? The purpose of offering the evidence, Judge Gregersen, in light of the defense of sudden quarrel or provocation or heat of passion, was that this defendant, notwithstanding his claim at the time that he was the victim of an aggressor and that the knife, for example, was not his knife, that, in fact, this defendant had been in this bar with this knife on a previous occasion and initiated a – a confrontation under circumstances sufficiently similar to go to the jury on the question of whether it was relevant to his intent on the night of the murder. And in addition to that, on another incident, on a nearby bar, further away in time, that once again he is involved in a confrontation, there is a larger man involved in the confrontation, the defendant produces a knife. Well, what provision in the evidence code, California evidence code, was it admissible? Well, the argument was made that it was admissible. What does that mean to you? Evidence code section 1101 of the California evidence code. So I do want to address, Judge Gersen. Which tells us what? Which tells us that where circumstances of a prior act or offense share sufficient similarity to the charge offense, they are – they may be admitted as relevant evidence of the defendant's intent on the – at the time in question. That's – that's it in a nutshell. And there are – certainly have been other cases in which that code section has been extremely broadly interpreted. I want to address in my last minute Judge Berzon's observation about the AEDPA, if I may. Judge Berzon, you asked, as I recall, whether or not the fact that the State ultimately rested its decision on harmless error grounds renders the AEDPA moot. No, I didn't say that. Well, maybe I did. It's not that it renders it moot. It's that whether the harmless error piece of it is reviewable under AEDPA or under Brecht-Rick. And I would submit that – that AEDPA – well, that both do apply, but that AEDPA applies in the first instance because I believe that under AEDPA, it is the result that the State court reaches that is evaluated in light of the Supreme Court precedent. And therefore, the result in this case was that the defendant's fair trial rights were not violated. So that was my answer to your question, and I see my time is up. That's an interesting way into it. All right. Thank you. Thank you. Rebuttal? Your Honor, I'm out of time. You're out of time. Okay. All right. Thank you.
judges: Pregerson, Fernandez, Berzon